IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| RODNEY L. WARING, Personal Representative for the Estate of Raudnesia Jachirri Waring,<br><br>Plaintiff,<br><br>Vs.<br>JEREMY S. KRAFT, Individual and as Agent of City of North Charleston and North Charleston Police Department;<br>JORDAN G. WILLIAMSON, Individually and as Agent of City of North Charleston and North Charleston Police Department;<br>REGGIE BURGESS, Individually and as Agent of City of North Charleston and North Charleston Police Department;<br>R. KEITH SUMMEY, Individually and as Agent of City of North Charleston and North Charleston Police Department;<br>CITY OF NORTH CHARLESTON and NORTH CHARLESTON POLICE DEPARTMENT,<br><br>Defendants. | CIVIL ACTION NO.: 2:23-cv-5453-RMG<br><br>**JEREMY S. KRAFT'S REPLY BRIEF** |

NOW COMES Defendant Jeremy S. Kraft, by and through his undersigned counsel, pursuant to Rule 12(b)(6) and/or Rule 12(c) of the Federal Rules of Civil Procedure, replying to Plaintiff's Memorandum in Opposition to Defendant Motion to Dismiss/Motion for Judgment on the Pleadings as follows:

**I. Procedural Acknowledgment and Clarification**

Defendant Kraft concedes that the Motion should be heard as a 12(c) Motion; however, it does not change the arguments and analysis before the court. Additionally, including the radio and dispatch audio does not convert the motion to one for Summary Judgment. As stated in the Defendant's initial brief, extrinsic evidence may be considered part of a complaint when it is (1)

1

attached to the pleading, (2) incorporated by reference in the pleading, or (3) the court deems the evidence integral to at least one claim in the pleading. Plaintiff cannot evade a properly argued motion to dismiss simply because plaintiff chose not to attach the document to the complaint or to incorporate it by reference.

Additionally, since the actual audio is available, this court need not take the Plaintiff's interpretation, inferences, conclusions, spin, or arguments about what the audio contains as well pled allegations. *See Scott v. Harris*, 550 U.S. 372, 378-381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). (Even though courts are required to view the facts in the light most favorable to the party opposing a dispositive motion, and this usually means adopting the plaintiff's version of the facts in a qualified immunity case, where "the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.") *Scott*, at 380, wherein the Supreme Court found that the "Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."

## II) Qualified Immunity

Officer Kraft's defense of Qualified Immunity is contained in Paragraphs 27 and 33 of his Answer. Officer Kraft's initial brief cited cases from the District of South Carolina, the 4th Circuit and Circuits across the county that support his claim for qualified immunity under the allegations contained in his Complaint. The Complaint alleges the following:

-the call was an "emergency call" or "shots fired" call (Entry No. 1, ¶25);

-the caller was "bleeding from the mouth" (Id.);

-the dispatcher assigned "Officers" to the call (Id.);

-at 5:05 PM, Officers Williamson was two of ten (10) officers assigned to respond to the call to stage for EMS and that Officer Kraft went with him (Entry No. 1, ¶32);

-the accident occurred at 5:06 PM, one minute later (Entry No. 1, ¶48); and

-officer Kraft ran a redlight, while traveling in excess of the posted speed limit causing the accident at issue (Entry No. 1, ¶48).

In his memorandum, Plaintiff does not reference one case that would have made it clear to a reasonable officer that the decision to treat a response to the scene of a "emergency" call/"shots fired" call from a victim bleeding from the mouth as anything other than an emergency was considered unlawful. Furthermore, he cited no case law that would have put a reasonable officer on notice that such a decision to respond and the way in which the vehicle was operated during the response would be held to a "deliberate indifference" standard as opposed to an "intent to harm" standard. He didn't because he can't. It does not exist.

Since "the doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known", Officer Kraft is entitled to judgment on the pleadings. *Rogers v. City of Amsterdam*, 303 F.3d 155, 158 (2d Cir.2002) (*quoting Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999)); *accord Williams v. Goord*, 142 F.Supp.2d 416, 428 (2001). "This policy is justified in part by the risk that the `fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Williams*, 142 F.Supp.2d at 428 (*quoting Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

### III) 42 U.S.C. § 1983 in the Context of an Emergency Response

It should also be clear to the court that the call alleged in the Complaint was an emergency. Plaintiff's bald assertion/conclusion that it was a non-emergency call flies in the face of his own allegations. Again, the Complaint alleges the following:

- the call was an "emergency call" or "shots fired" call (Entry No. 1, ¶25);

-the caller was "bleeding from the mouth" (Id.);

-the dispatcher assigned "Officers" to the call (Id.);

-at 5:05 PM, Officers Williamson was two of ten (10) officers assigned to respond to the call to stage for EMS and that Officer Kraft went with him (Entry No. 1, ¶32);

-the accident occurred at 5:06 PM, one minute later (Entry No. 1, ¶48); and

-officer Kraft ran a redlight, while traveling in excess of the posted speed limit causing the accident at issue (Entry No. 1, ¶48).

Plaintiff's conclusion that the call was a non-emergency call also flies in the face of the call record and dispatch record on which he relies to make the allegations:

-5:01:11 PM "Brother bleeding out mouth";

-5:03:24 PM "He got shot in the mouth";

-5:03:47 PM "multi-agency Law Enforcement Incident";

-5:04:48 PM "UNK (unknown) who or where SUSP (suspect) is;

-5:05:04 PM Emergency Tone is put out;

-5:05:06 Problem changed from assist other agencies to assault in progress by law enforcement;

-5:05:28 PM chief complaint is gunshot/penetrating trauma, happened now, location of assailant is not known, serious bleeding and wound is in a central location;

-5:06:48 PM ADV (advised) blood is getting thicker and worse.

*See* Entry No. 37-1, p. 1-2. According to the Complaint, Officer Williamson and Kraft make the decision to respond with lights and sirens at 5:05:53 PM. *See* Entry No. 1, ¶32. Plaintiff alleges the accident takes place about one minute later and 5:06 PM. *See* Entry No. 1, ¶48.

Additionally, Plaintiff's conclusion that the call was a non-emergency call, is contrary to the 911 and dispatch audio he relies upon in his Complaint. The caller to 911 reports that his brother is bleeding from the mouth uncontrollably; he asks the responders to hurry multiple times; he reports the bleeding as serious and getting worse; he reports that his brother was shot in the mouth with a gun; and he doesn't know who shot him or where the shooter is located. (*See* Entry No. 31-2.) In the North Charleston dispatch's audio recording you can hear the radio being put in emergency mode via an audible tone; you hear the dispatcher report a male subject bleeding from the mouth/shot in the mouth and the dispatcher calls all available units to the shooting. The radio is never taken out of emergency mode. (See Entry No. 31-3.)

As cited in Officer Kraft's original Motion, "[T] intent-to-harm standard most clearly applies 'in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'" *Id.* at 978 (*citing Neal v. St. Louis County Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir.2000)). Since *Lewis*, courts have extended the application of the intent-to-harm standard to other types of emergency high-speed driving, holding that it applies not only "to

5

an **officer's decision to engage in high-speed driving** in response to other types of emergencies, [but also] to the **manner in which the police car is then driven** in proceeding to the scene of the emergency." *E.g., Terrell*, 396 F.3d at 979, *emphasis added*. Thus, under *Lewis*, the intent-to-harm culpability standard applies to officers responding to an emergency call. *Terrell*, 396 F.3d at 980. *See also Radecki v. Barela*, 146 F.3d 1227, 1230 (10th Cir. 1998) (intent-to-harm standard applies to "situations involving law enforcement and governmental workers deployed in emergency situations.").

The factual allegations contained in the Complaint and the documents the Complaint references and relies on indicate an emergency call. The Court does not have to take as true any of the Plaintiff's conclusion to the contrary. Since the Plaintiff did not plead that Officer Kraft intended to harm the decedent, judgment on the pleadings in favor of Officer Kraft is mandated.

### IV) State Court Tort Claims Under the South Carolina Tort Claims Act

While the allegations contained in the Complaint may be sufficient to allege a tort, Plaintiff has improperly brought tort actions against Officer Kraft in his individual capacity. The South Carolina Tort Claims Act is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents. S.C. Code §15-78-20(b). Under the Act, "Employee" is defined as any law enforcement officers in the scope of official duty. S.C. Code §15-78-30(c). The Act defines "loss" as death and any other element of damages recoverable in actions for negligence. S.C. Code §15-78-30(f). The Act specifically applies to actions or claims for death. S.C. Code §15-78-170.

The Act is the exclusive remedy for any tort committed by an employee of a governmental entity and a governmental employee who commits a tort while acting within the scope of his

official duty is not liable except as expressly provided for in the Act with the exception of conduct not within the scope of the official duties or that is actual fraud, malice, intent to harm, or a crime involving moral turpitude. S.C. Code §15-78-70 (a)&(b). When bringing an action under the Act, the Plaintiff shall name as a party defendant **only the agency or political subdivision** for which the employee was acting. S.C. Code §15-78-70(c), *emphasis added*. In the event that an employee is named as a party-defendant, the Act requires that the agency or subdivision be substituted as the proper party. *Id.*

Officer Kraft's Motion for Judgment on the Pleadings only concerns the tort claims brought against him individually. The tort claims against the proper party, in this case, The City of North Charleston, are not addressed in Officer Kraft's Motion. Ultimately, those claims could be remanded back down to the state court level, if they are the only ones to survive.

## V. Conclusion

For the foregoing reasons and those contained in his original Motion, including the case law cited therein, Defendant Jeremy S. Kraft's Motion for Judgment on the Pleadings should be granted regarding the First, Fifth, Ninth, Tenth and Eleventh Causes of Action.

**RICHARDSON, PLOWDEN & ROBINSON, P.A.**

*/s/ Payton D. Hoover*
James H. Elliott, Jr., Fed. Bar No. 07043
Payton D. Hoover, Fed. Bar No.: 10397
235 Magrath Darby Blvd., Ste. 100
Mt. Pleasant, SC 29464
Tele: 843-805-6550
Fax: 843-805-6599
jelliott@richardsonplowden.com
phoover@richardsonplowden.com
***ATTORNEYS FOR JEREMY S. KRAFT***

September 12, 2024

Mount Pleasant, South Carolina

**CERTIFICATE OF SERVICE**

I hereby certify that the following foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record that have made an appearance in this case.

This 12th day of September, 2024.

By:    */s/ Payton D. Hoover*_____
       Payton D. Hoover (Federal Bar No. 10397)

       *Attorney for Jeremey S. Kraft*