# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| RODNEY L. WARING, Personal Representative for the Estate of Raudnesia Jachirri Waring,<br><br>     Plaintiff,<br><br>Vs.<br><br>JEREMY S. KRAFT, Individual and as Agent of City of North Charleston and North Charleston Police Department; JORDAN G. WILLIAMSON, Individually and as Agent of City of North Charleston and North Charleston Police Department; REGGIE BURGESS, Individually and as Agent of City of North Charleston and North Charleston Police Department; R. KEITH SUMMEY, Individually and as Agent of City of North Charleston and North Charleston Police Department; CITY OF NORTH CHARLESTON and NORTH CHARLESTON POLICE DEPARTMENT,<br><br>     Defendants. | Case No. 2:23-cv-5453-RMG<br><br>**ORDER AND OPINION** |

   This matter comes before the Court on the summary judgment motions of Defendant Jeremy S. Kraft ("Kraft") (Dkt. No. 40), Defendants City of North Charleston ("North Charleston") and North Charleston Police Department ("NCPD") (Dkt. No. 41), Defendants Reggie Burgess ("Burgess") and Keith Summey ("Summey") (Dkt. No. 42), and Defendant Jordan G. Williamson ("Williamson") (Dkt. No. 43). Plaintiff has filed a response in opposition to Defendants' motions (Dkt. No. 45). Defendants have filed replies to the opposition. (Dkt. Nos. 46-49). For the reasons set forth below, the Court grants Defendants' motions for summary judgment.

1

I. **Background**

On October 27, 2023, Rodney Waring ("Plaintiff"), as Personal Representative for the Estate of Raudnesia Jachirri Waring ("Ms. Waring"), filed a complaint alleging that Defendant Kraft violated his duty of care and Ms. Waring's constitutional rights when he sped through a red light and crashed into Ms. Waring's car, killing her. (Dkt. No. 1). Plaintiff's causes of action against Defendant Kraft include negligence, civil rights violations under 42 U.S.C § 1983, survival damages under S.C. Code Ann. § 15-5-90, wrongful death damages under S.C. Code Ann.§ 15-51-10, and attorney fees under 42 U.S.C. § 1988.

On July 5, 2022, an individual ("caller") called 911 to aid his brother ("victim") who was shot in the mouth earlier that day. (Dkt. No. 1 at ¶ 25). After about four minutes into the call, the caller reported that the victim was shot in the mouth. (*Id.*). The caller requested medical care, specifically EMS, and the 911 dispatcher called EMS and assigned officers to the call. (*Id.* at 8). The caller noted that the injury was non-traumatic, the victim did not have a bleeding disorder, and the suspects were not in the area. (*Id.*). Plaintiff alleges that the victim was breathing and completely alert, and the caller said the patient was fine. (Dkt. No. 45 at 13). The gunshot victim remained awake for the entire call but was in pain. (*Id.*). The caller also noted that the blood loss was getting worse and asked the responders to hurry multiple times. (Dkt. No. 40-2). The dispatcher changed the original medical EMS call from hemorrhage/bleeding/laceration to a GSW/Stab/PenTrauma call and advised EMS to stage the scene. (Dkt. No. 1 at ¶ 25). Plaintiff alleges that this call is one for emergency medical services, while Defendants allege that this call established an emergency for police officers as well. (Dkt. No. 46 at 1-2). Defendants note that the Computer Aided Dispatch ("CAD") report states that this was a multi-agency law enforcement incident. (Dkt. No. 45-1 at 61).

2

Plaintiff alleges that Defendant Williamson was assigned to respond to the call and Defendant Kraft, though not assigned, nonetheless took the lead in response. (Dkt. No. 1 at ¶ 35). Defendants allege that the dispatch audio and CAD report show that none of the responding officers were specifically dispatched to the call. (Dkt. No. 46 at 2). Defendant Williamson followed Kraft and allegedly reported that Kraft was responding with him. (Dkt. No. 46 at 2; *see also* Dkt. No. 40-5 at 2:09). Plaintiff alleges that Defendant Kraft maneuvered his vehicle into oncoming traffic, failed to follow his fellow officer in turning left on the intersection of Montague Avenue and Dorchester Road, and instead sped through the intersection at over double the speed limit, and struck Ms. Waring's car, killing her. (Dkt. No. 1 at ¶¶ 39-40). Both the South Carolina Highway Patrol and NCPD investigated the crash and concluded the Plaintiff was not at fault and that the crash was caused by Defendant Kraft. (*Id*. at ¶¶ 54-56).

Plaintiff's complaint includes the following causes of action: negligence as to Defendants Kraft, NCPD, and North Charleston; negligent hiring, retention, training, and supervision as to NCPD and North Charleston, 42 U.S.C. § 1983 constitutional claims against all Defendants, Survival and Wrongful Death as to all Defendants, and attorney fees. (Dkt. No. 1). Plaintiff seeks money damages. (Dkt. No. 1).

Defendant Kraft filed a summary judgment motion arguing that he is entitled to qualified immunity and is not a proper party to any of Plaintiff's tort claims. (Dkt. No. 40).

Defendants North Charleston and NCPD filed a summary judgment motion arguing that the Court should dismiss the case under the *Colorado River* Abstention Doctrine, there was no underlying constitutional violation, Plaintiff has failed to establish *Monell* liability, and Plaintiff has not met his burden for the state law claims. (Dkt. No. 41).

Defendants Burgess and Summey filed a summary judgment motion arguing that there was no underlying constitutional violation, that they have no liability under *Monell* or supervisory liability, and that they are entitled to qualified immunity. (Dkt. No. 42).

Defendant Williamson filed a summary judgment motion arguing that there was no evidence of Williamson's personal participation in the alleged violation, there is no underlying constitutional violation, Williamson is entitled to qualified immunity, and immunity pursuant to the Tort Claims Act. (Dkt. No. 43).

Plaintiff filed a response in opposition to the summary judgment motions. (Dkt. No. 45). Defendants filed replies. (Dkt. Nos. 46-49).

## II.    Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-

moving party must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

For the following reasons, the Court grants Defendants' motions for summary judgment.

#### A. Officer Kraft's Motion for Summary Judgment (Dkt. No. 40)

Plaintiff brings this 42 U.S.C. § 1983 action asserting Defendant Kraft violated his Fourteenth Amendment substantive due process rights. (Dkt. No. 1 at ¶ 102). Plaintiff also brings claims under the South Carolina Tort Claims Act. (*Id.* at ¶¶ 77, 124, 126)

Defendant Kraft brings his summary judgment motion arguing that he did not violate Plaintiff's Fourteenth Amendment right and that he is entitled to qualified immunity. (Dkt. No. 40). Defendant Kraft also argues that he is not the proper party for Plaintiff's South Carolina Tort Claims Act claims. (*Id.* at ¶ 24).

##### 1.   42 U.S.C. § 1983

Although § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional or statutory rights. 42 U.S.C. § 1983; *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Here, the federal right that Plaintiff seeks to vindicate stems from the substantive component of the Fourteenth Amendment's Due Process Clause.

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the

concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal citation omitted).

### a. Standard of Culpability

To establish a substantive due process violation of a state official, Plaintiff must show that the Defendant's conduct "shocks the conscience." S*ee Manion v. North Carolina Med. Bd.*, 693 Fed. Appx. 178, 181 (4th Cir. 2007) (determining whether defendants' "conduct was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience") (internal quotation marks omitted). There are two culpability standards that dictate whether conduct sufficiently "shocks the conscience" to establish a due process violation. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Defendant Kraft argues that the "intent to harm" standard controls here, and Plaintiff argues that the lower "deliberate indifference" standard applies.

To determine which standard to apply, the court must evaluate whether "actual deliberation is practical." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). In *Lewis*, the Supreme Court concluded that the intent to harm standard controls when an officer is involved in a highspeed chase because the officer must make instantaneous judgments with little or no opportunity to reflect or deliberate. *Lewis*, 523 U.S. at 846. The Supreme Court noted that "the intent-to-harm standard most clearly applies 'in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'" *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (citing *Neal v. St. Louis County Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir.2000)). Originally used as the standard in high-speed chases, the *Terrell* court extended the intent to harm standard to include responding to emergency calls. *Terrell*, 396 F.3d at 980.

The other standard is deliberate indifference, which is "treated as equivalent to one of reckless disregard for life." *Lewis*, 523 U.S. at 854. For less restrained scenarios, like when a police

officer drives a vehicle in a non-emergency, non-pursuit context, courts have found that the deliberate indifference standard applies. *Dean v. McKinney*, 976 F.3d 407, 415 (4th Cir. 2020) ("[W]hen an officer is able to make unhurried judgements with time to deliberate, such as in the case of a non-emergency, deliberate indifference is the applicable culpability standard for substantive due process claims involving driving decisions."). Further, the Tenth Circuit also found that when an officer "isn't pursuing any emergency or any official business at all" and "no one has called for his aid" the intent-to-harm standard is not required. *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015). The *Browder* Court further found that "a police officer could be liable under the Fourteenth Amendment for driving in a manner that exhibits a conscience-shocking deliberate indifference to the lives of those around him." *Id*. at 1083. (internal quotation marks omitted). The Supreme Court has noted that the "deliberate indifference" standard "is sensibly employed only when actual deliberation is practical" and the officer has "time to make unhurried judgments." *Lewis*, 523 U.S. at 851, 853.

The parties in the present case disagree as to what standard of culpability should be used to determine whether Defendant Kraft's conduct was conscience shocking. Defendant Kraft argues that the intent to harm standard should apply because he was responding to an emergency call. Plaintiff argues that the call was not a police emergency and therefore, Defendant Kraft should be held to the deliberate indifference standard.

Plaintiff argues that the 911 call did not constitute a police emergency. Plaintiff alleges that the individual on the 911 call requested medical help, not police help. (Dkt. No. 45 at 13). The caller also felt safe enough to retrieve the victim's car that was left in the street. (*Id*. at 13). There were no signs of an active shooter, nor were gunshots heard on the call. (*Id*. at 13). The caller noted that the patient was moving and doing fine, and the conversation with the dispatcher was almost

exclusively about medical care for the victim. (*Id*. at 13). Plaintiff's expert, Mr. Baldwin, claimed that the notification over the police airwaves was not a "Shots Fired" call, not an active shooting scene, and only a call for EMS assistance. (*Id*. at 5). Plaintiff argues that the 911 call did not constitute an emergency for police officers because the caller did not request the police, there was no reason to expect the suspect to be in the area, and the conversation was only about medical assistance.

Defendant Kraft alleges that the call did constitute an emergency. The dispatcher put the radio into emergency mode and never took it out of emergency mode. (Dkt. No. 40-3). The CAD Report notes that at 5:05:06 PM, "Problem changed from assist other agencies to assault in progress by law enforcement" and that the suspect's location was unknown. (Dkt. No. 40-4). The accident occurs approximately one minute later at 5:06 PM. Defendant also points to the NCPD Policies and Procedures Manual, which states that the "responding officer(s) will determine if an emergency response is necessary, not the dispatcher." (Dkt. No. 46 at 3). Further, the manual states that "if uncertainty exists as to the seriousness of the request for service, that call will be presumed as being an emergency call for law enforcement assistance." (*Id*. at 3). Defendant Kraft argues that the seriousness and nature of the wound, the missing suspect, the emergency mode of the radio, the CAD report stating it was a multi-agency law enforcement incident, and the language from the Policies and Procedures Manual suggest the 911 call should be treated as an emergency.

The Court finds that Defendant Kraft was responding to a 911 emergency call involving an active shooter, and therefore, Defendant Kraft should be held to an intentional harm standard. *See Sitzes v. City of West Memphis*, 606 F.3d 461, 464 (8th Cir. 2010) (requiring intent to harm where officer crashed into a car while driving in excess of 80-mph on a 30-mph road without sirens or lights in response to a robbery of $55 and an alleged assault even though the crime was not

ongoing and other officers were already en route); *Terrell v. Larson*, 396 F.3d 975, 978–79 (8th Cir. 2005) (applying the intent-to-harm standard where officer collided with bystander while engaged in high-speed response to an emergency domestic disturbance call); *see also Otero v. Kane*, No. 22-4141, 2024 WL 4173777, at *8 (E.D. Pa. Sept. 12, 2024) (finding that "no § 1983 police pursuit case in this Circuit has been decided under a standard less than intent to harm")

### b. Intent to Harm

The Court turns next to consider whether Defendant Kraft's conduct, based on the facts viewed in the most favorable light to Plaintiff, could reflect an intent to harm such that is shocks the conscience. Here, Plaintiff has offered no evidence to support the contention that Defendant Kraft operated his vehicle with intent to harm Ms. Waring, or any other person.

Plaintiff has not shown that the Defendant's conduct "shocks the conscience" under the intent to harm standard. Therefore, Plaintiff has failed to properly plead a due process violation against Defendant Kraft. *See Truong v. Hassan*, 829 F.3d 627, 632 (8th Cir. 2016) (finding the defendant "was not acting in a manner to maliciously or sadistically cause [the plaintiff] physical harm" but rather "[his] actions were related to his legitimate responsibilities"). The Court grants Defendant Kraft's summary judgment as to the constitutional claims. Because Plaintiff's constitutional claims are dismissed, the Court declines to address Defendant Kraft's qualified immunity arguments.

### 2. Tort Claims

Plaintiff's claims against Defendant Kraft also include negligence, a survival claim, and a wrongful death claim. (Dkt. No. 1 at ¶¶ 77, 124, 126). Defendant Kraft argues that he is not a proper party to a suit involving Plaintiff's tort claims. (Dkt. No. 40). With Plaintiff's constitutional

claims dismissed, the Court declines to exercise supplemental jurisdiction on the remaining state law claims.

The district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367; *see also Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006) ("Once a district court has dismissed the federal claims in an action, it maintains wide discretion to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction.") (internal quotation marks omitted). In declining to exercise supplemental jurisdiction, the Court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

Here, Plaintiff has a pending case in state court regarding all of Plaintiff's state law claims in the case at bar. *Waring v. Kraft*, No. 2023CP1003330 (SC Ct. of Com. Pl., July 11, 2023). Therefore, the Court is unable to find that the parties would be inconvenienced or unfairly prejudiced by declining to exercise jurisdiction over the state tort claims, nor does the Court find any underlying issues of federal policy involved in this state law claim. The comity factor further weighs in favor of declining to exercise jurisdiction, as do considerations of judicial economy. As a result, Plaintiff's state law claims are dismissed without prejudice.

**B. North Charleston & NCPD's Motion for Summary Judgment (Dkt. No. 41)**

Plaintiff's causes of action against North Charleston include negligent hiring, retention, training, and supervision of Officers Kraft and Williamson, a § 1983 claim, a survival claim and a wrongful death claim. (Dkt. No. 1 at ¶¶ 79, 88, 91, 94, 101, 124, 126). Plaintiff's causes of action against NCPD include negligent hiring, retention, training, and supervision of Officers Kraft and

Williamson, § 1983 claims under municipal liability, a survival claim, and a wrongful death claim. (Dkt. No. 1 at ¶¶ 78, 88, 91, 94, 101, 113, 116, 120, 124, 126).

Defendants North Charleston and NCPD argue that the case should be dismissed pursuant to the *Colorado River* abstention doctrine, that there was no underlying constitutional violation to give rise to *Monell* liability, and that Plaintiff has failed to properly allege tort claims. (Dkt. No. 41). For the following reasons, the Court grants Defendants North Charleston and NCPD's summary judgment motion.

### 1. 42 U.S.C. § 1983

Plaintiff brings this § 1983 action against Defendants NCPD and North Charleston alleging *Monell* liability for the alleged constitutional violation of Officer Kraft. (Dkt. No. 1 at ¶ 105). Defendants NCPD and North Charleston argue that Plaintiff failed to establish the underlying constitutional violation. (Dkt. No. 41 at 5-9).

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court noted that municipalities and local governments can be sued directly for their illegal acts under § 1983. 436 U.S. 658, 690 (1978). The court in *Owens v. Baltimore City State's Att'ys Off.* held that "[o]nly if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act" and therefore be subject to *Monell* liability. 767 F.3d 379, 402 (4th Cir. 2014). However, no *Monell* claim can exist, "where there is no underlying constitutional violation by the employee." *Young v. City of Mt. Rainier,* 238 F.3d at 579 (4th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (per curiam) ("[N]either Monell . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when it has been concluded that the officer inflicted no constitutional harm."); *Anderson v. Caldwell Cty. Sherriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors

or local governments can exist without a constitutional violation committed by an employee."). A claim without an underlying constitutional violation naturally creates no vicarious liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017).

Plaintiff argues that Defendants North Charleston and NCPD failed to properly train, supervise, and monitor the officers and also had a policy/custom that implicitly ratified the dangerous misuse of city vehicles by Officers. (Dkt. No. 1 at ¶ 109).

Defendants argue that there was no constitutional violation underlying any potential *Monell* liability. (Dkt. No. 41 at 5-8). As stated above, the Court agrees. Because Plaintiff failed to properly plead a constitutional violation, there can be no *Monell* attributable to North Charleston or the NCPD. Therefore, the Court grants Defendants North Charleston and NCPD's summary judgment as to the constitutional claims.

   **2. State Tort Claims**

Plaintiff brings state tort claims against Defendants North Charleston and NCPD including negligent hiring, retention, training, and supervision of Officers Kraft and Williamson, and a wrongful death claim. (Dkt. No. 1 at paragraph 78, 80, 88, 91, 94). These claims are brought pursuant to the South Carolina Tort Claims Act. Defendants North Charleston and NCPD argue that Plaintiff has not met his burden of proof on the state law claims. As stated above, the Court declines to exercise its supplemental jurisdiction over the remaining tort claims because there is a pending state court action addressing the same issues.

Because the Court is declining to exercise its jurisdiction over this case, the Court does not address Defendant North Charleston and NCPD's summary judgment motion as to the *Colorado River* Abstention Doctrine.

### C. Burgess and Summey's Motion for Summary Judgement (Dkt. No. 42)

Plaintiff has brought 42 U.S.C. § 1983 claims against Defendants Burgess and Summey under theories of *Monell* liability and supervisory liability. (Dkt. No. 1 at ¶ 105). At the time of the Accident Defendant Burgess was Chief of the NCPD and Defendant Summey was the Mayor of North Charleston. (Dkt. No. 42 at 1-2).

#### 1. *Monell* Liability

The Defendants argue that Plaintiff has failed to set forth the underlying viable 14th Amendment claim against Kraft and Williamson and failed to establish an official policy or custom necessary for a *Monell* claim against him. (Dkt. No. 42 at 5). As stated above, Plaintiff has not properly alleged a constitutional violation by Defendant Kraft, which is required for a *Monell* claim. Further, § 1983 *Monell* claims against individuals acting in their official capacity are treating as claims against the government entities they represent. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Love–Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming District Court dismissal of school Superintendent where the court "correctly held that the § 1983 claim against [the defendant] in his official capacity as Superintendent is essentially a claim against the Board[,] [also a defendant,] and thus should be dismissed as duplicative."). Because Plaintiff also maintains the same claims against Defendants North Charleston and NCPD, the Court dismisses Plaintiff's *Monell* claims against Defendants Burgess and Summey as duplicative.

**2. Supervisory Liability**

Defendants Burgess and Summey also argue that there is no supervisory liability that is applicable to them. (Dkt. No. 42 at 9).

Under § 1983, there is no *respondeat superior* liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The plaintiff must show personal fault based on personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d, 926, 928 (4th Cir. 1977). The Fourth Circuit has stated: "A supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013); *see Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) ("[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.").

Here, Plaintiff has failed to state a constitutional violation of Defendant Kraft. No supervisory liability can be attributed to Defendants Summey and Burgess for a constitutional violation that did not occur. Therefore, the Court dismisses Plaintiff's claims against Defendants Summey and Burgess pursuant to supervisory liability. Because the Court finds that no constitutional violation occurred, the Court declines to address the qualified immunity defense.

**D. Jordan G. Williamson's Motion for Summary Judgment (Dkt. No. 43)**

Plaintiff's causes of action against Defendant Williamson include a § 1983 constitutional claim, a survival claim, and a wrongful death claim. (Dkt. No. 1 at ¶¶ 101, 124, 126). Defendant Williamson argues that Plaintiff failed to provide any evidence that implicates him causing a constitutional deprivation. (Dkt. No. 43-1, at 5). Plaintiff's response failed to address this. (Dkt. No. 45).

It is well-settled that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. *Trulock v. Freeh*, 275 F.3d

391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)

Here, Plaintiff's complaint alleges that Defendant Williamson, along with Defendant Kraft, "greatly exceeded the posted speed limit and operated their City Vehicles without due regard" and that they "needlessly put the lives of all the people on the road that day at grave risk." (Dkt. No. 1 at ¶¶ 36, 59). Not only is there no underlying constitutional violation, Plaintiff's § 1983 cause of action makes no allegations regarding Williamson, and Plaintiff's expert, Daniel Baldwin, offered no opinions related to Defendant Williamson's conduct. Plaintiff makes no argument that Defendant Williamson caused, directly or indirectly, the collision to occur. Plaintiff has not established a genuine dispute as to material fact regarding Defendant William's personal or official conduct and liability in this case. Therefore, the court grants Defendant Williamson's summary judgment motion. (Dkt. No. 43). Because Defendant Williamson is dismissed, the Court declines to address his qualified immunity arguments.

IV. **Conclusion**

In light of the foregoing, the Court **GRANTS** Defendant Kraft's summary judgment motion as to Plaintiff's constitutional claims. (Dkt. No. 40). The Court **GRANTS** Defendants North Charleston and NCPD's summary judgment motion as to Plaintiff's constitutional claims. (Dkt. No. 41). The Court **GRANTS** the summary judgment motions of Defendants Burgess and Summey (Dkt. No. 42) and Defendant Williamson (Dkt. No. 43). The Court declines to exercise jurisdiction over Plaintiff's state law claims against Defendants Kraft, North Charleston, and NCPD and, therefore, **DISMISSES** Plaintiff's state law claims without prejudice.

**AND IT IS SO ORDERED.**

                                                  s/ Richard M. Gergel  
                                                 Richard Mark Gergel  
                                                 United States District Judge

January 31, 2025  
Charleston, South Carolina